UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR J.P. MORGAN MORTGAGE ACQUISITION TRUST 2007-CH4, ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-CH4, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.: 2:16-CV-19-TAV-MCLC |
| JACQUELINE R. BIRCHFIELD, DONALD BIRCHFIELD, and EASTMAN CREDIT UNION, | ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil matter is before the Court on plaintiff's Motion for Summary Judgment [Doc. 17], defendant Eastman Credit Union's ("ECU") Cross Motion for Summary Judgment [Doc. 20], and defendants Donald Birchfield and Jacqueline Birchfield's ("the Birchfields") Cross Motion for Summary Judgment [Doc. 24]. The parties each responded to these motions [Docs. 22, 23, 25, 28, 29]. For the reasons stated herein, the Court will grant plaintiff's motion for summary judgment and deny defendants' cross motions.

**I.   Background**

In 2006, Herbert and Mary Miller conveyed real property located at 351 Lyons Road, Bluff City, Tennessee 37618 ("the property") to the Birchfields pursuant to a warranty deed ("the warranty deed"), which was recorded in the Sullivan County Register's

Office in book 2467C, page 330 [Doc. 18 p. 2; Doc. 21 p. 1]. The warranty deed identified three tracts of land that make up 351 Lyons Road—Tract I, Tract II, and Tract III—and included the metes and bounds descriptions of each tract [Doc. 1-1 pp. 31–32; Doc. 18 p. 2; Doc. 21 p. 2]. In order to finance this purchase, the Birchfields obtained a purchase money loan from Chase Bank in the amount of $229,600.00, by which they mortgaged the entire property, and Ms. Birchfield executed a promissory note as evidence of said debt [Doc. 18 p. 2; Doc. 23 p. 1]. To secure repayment of the loan and note, the Birchfields executed a purchase money deed of trust, conveying the property to a Chase Bank trustee, and the deed of trust was recorded on November 3, 2006, in book 2467C, page 333 ("first deed of trust") [*Id.*].[1] The Birchfields simultaneously obtained a second loan, in the amount of $57,400.00, and executed a second deed of trust conveying the property to the same Chase Bank trustee ("second deed of trust") [*Id.*; Doc. 18-2].[2] The second deed of trust was also recorded on November 3, 2006, in book 2467C, page 352 [Doc. 18 p. 2].

Chase Bank assigned the first deed of trust to plaintiff on September 22, 2011 [Doc. 18-3], and this assignment was recorded on October 14, 2011 [Doc. 18 p. 3; Doc. 21 p. 3]. Plaintiff appointed Wilson and Associates PLLC ("Wilson & Associates") as the successor trustee for the first deed of trust [Doc. 18-4]. The Birchfields defaulted on their loan and

---

[1] Defendant ECU contends that the first deed of trust conveyed only Tracts I and II to the Chase Bank trustee [Doc. 21 p. 2], while plaintiff argues that the parties intended to convey all three tracts [Doc. 18 p. 3].

[2] Defendant ECU also asserts that the second deed of trust conveyed only Tracts I and II of the property [Doc. 21 p. 2], and plaintiff maintains that it was meant to convey the entire property [Doc. 18 p. 3].

first deed of trust, and Wilson & Associates conducted a non-judicial foreclosure sale of the property on March 8, 2013 [Doc. 18 p. 3; Doc. 21 p. 3]. Plaintiff purchased the property at the foreclosure sale, and Wilson & Associates conveyed the property to plaintiff pursuant to a trustee's deed, which was recorded on March 20, 2013, in book 3071, page 2379 ("trustee's deed") [Doc. 18 p. 3; Doc. 18-1; Doc. 21 p. 3].[3]

The first and second deeds of trust (collectively, "deeds of trust"), as well as the trustee's deed, include descriptions of Tract I and Tract II, but they do not specifically reference Tract III—which encompasses the Birchfields' home—or list its metes and bounds description [Doc. 18 p. 3; Doc. 21 p. 2; Doc. 23 p. 2]. Additionally, while the deeds of trust and the trustee's deed include the same description of Tract I as the warranty deed, they do not include the same description of Tract II [Doc. 21 p. 4; *compare* Doc. 18-1 pp. 4–5, *with* Doc. 18-1 pp. 26–28]. They instead appear to cite the metes and bounds descriptions from an unrecorded survey prepared in 1994, which contains property to the north of the Birchfields' property that they did not own [Doc. 23 p. 2]. The description in the deeds of trust includes the 0.53-acre tract from Tract II in the warranty deed, but it does not include the 0.38 acres from Tract III of the warranty deed [*Id.*].[4] The deeds of trust and the trustee's deed do, however, list the address of all three tracts, 351 Lyons Road, Bluff

---

[3] Defendants object to the use of plaintiffs' submitted tax maps and corresponding testimony of tax assessor Ron Hillman [*See* Doc. 18-1 pp. 1–3, 7, 37] as evidence in this matter [Doc. 22 p. 8; Doc. 25 p. 3]. The Court determines that it need not examine the tax maps or rely on Mr. Hillman's testimony with regard to these maps as part of its determination of the current motions and will, therefore, deny defendants' motion to exclude this evidence as moot.

[4] The deeds of trust also state that the Kaylors owned the conveyed property, rather than the Millers [Doc. 23 p. 2].

City, Tennessee 37618, and contain a derivation clause, stating that the included property was the same property conveyed to the Birchfields by warranty deed [Doc. 18 p. 3; Doc. 18-1 pp. 26, 28, 36].

Defendant ECU holds two judgment liens against all of the Birchfields' property, recorded on June 17 and 21, 2010, and August 11, 2011 [Doc. 18 p. 3; Doc. 21 p. 4]. ECU claims that it possesses the first and second priority liens against Tract III because the deeds of trust and plaintiff's trustee deed do not encompass Tract III [Doc. 21 p. 4]. The Birchfields also contend that ECU possesses a first priority lien on the "property that was omitted in the deed of trust" [Doc. 23 p. 2]. Thus, plaintiff brings the instant action, seeking to rescind the foreclosure and trustee's deed so that it may reform the deeds of trust "to reflect the intended and correct property descriptions in order that [p]laintiff's first position lien may be retained and clear title conveyed" [Doc. 18 p. 4].

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III.    Analysis**

Each of the three remaining parties in this matter move for summary judgment, arguing that no genuine issue of material fact exists [Docs. 17, 20, 24]. Plaintiff argues that Tract III was not included in the deeds of trust and trustee's deed due to mutual mistake

5

and that no third party would be prejudiced by reformation of the deeds on this basis. Alternatively, plaintiff contends that the Court should impose an equitable lien on Tract III. The Birchfields appear to agree that a mistake was made in omitting Tract III, but they argue that the deeds may not be reformed because the mistake was unilaterally made by plaintiff and because a third party, defendant ECU, would be prejudiced. ECU contends that the parties did not intend the deeds of trust to encompass Tract III. Alternatively, if the Court determines that failure to include Tract III was a mistake, ECU asserts that the deeds cannot be reformed because the mistake occurred due to plaintiff's negligence and because ECU would suffer prejudice.

  A.  **Sufficiency of Description in Deeds of Trust and Trustee's Deed**

    1.  **Law**

In order for a deed to be valid, it "must designate the land intended to be conveyed with reasonable certainty." *ABN AMRO Mortg. Grp. v. S. Sec. Fed. Credit Union*, 372 S.W.3d 121, 128 (Tenn. Ct. App. 2011) (internal citation and quotation marks omitted). "Generally, any description in a conveyance of the property is sufficient if it identifies the property, or if it affords the means of identification, as by extrinsic evidence. Courts are reluctant to declare instruments void for an uncertain description and will look to attendant facts to make them certain." *Id.* at 127. Thus, courts "will declare a deed void for uncertainty of description only where, after resorting to oral proof or after relying upon other extrinsic or external proof or evidence, that which was intended by the instrument

remains a mere matter of conjecture, or where the description cannot be made applicable to but one definite tract." *Id.*

Thus, parol evidence "is admissible to show the location and boundaries of the tract," if the deed itself "shows that some particular tract was intended." *Dobson v. Litton*, 45 Tenn. 616, 619 (1868). Even if the introduction of parol proof would create uncertainty as to what tract of land the deed was meant to convey, this does not bar the introduction of such evidence if there was "no uncertainty upon the face of the deed." *Id.* In sum, as submitted by the Tennessee Supreme Court, "Where an instrument is so drawn that, upon its face, it refers necessarily to some existing tract of land, and its terms can be applied to that one tract only, parol evidence may be employed to show where the tract so mentioned is located." *Id.* at 620.

Generally, extrinsic evidence must not "add to, enlarge, or in any way change the description contained in the conveyance, and the writing itself must furnish the hinge or hook on which to hang the aid thus afforded." *ABN*, 372 S.W.3d at 127. Upon a showing of mutual mistake, however, a court may consider parol evidence that contradicts or varies the terms of the written instrument. *See In re Miller*, 286 B.R. 334, 340 (Bankr. E.D. Tenn. 1999) ("In the case of mutual mistake which is asserted in the present case, parol evidence is admissible."); *McMillin v. Great S. Corp.*, 480 S.W.2d 152, 155 (Tenn. 1972) (noting that parol evidence may be used to contradict or vary the terms of a written instrument upon a showing of fraud or mutual mistake); *GRW Enters. v. Davis*, 797 S.W.2d 606, 611 (Tenn. Ct. App. 1990) ("[T]he parol evidence rule does not prevent using extraneous

7

evidence to prove that a written contract does not correctly embody the parties' agreement.").

Tennessee courts have recognized mutual mistake as an exception to the parol evidence rule, which is meant to "protect the integrity of written contracts." *GRW*, 797 S.W.2d at 610. When the terms of an agreement are clear, the parol evidence rule typically prohibits introduction of "extraneous evidence to alter, vary, or qualify the plain meaning of an unambiguous written contract." *Id.* (citing *Jones v. Brooks*, 696 S.W.2d 885, 886 (Tenn. 1985); *Clayton v. Haury*, 452 S.W.2d 865, 867 (Tenn. 1970)).

In cases of mutual mistake, however, extraneous evidence is not used to vary the written contract but rather to demonstrate that the "written contract does not correctly embody the parties' agreement." *GRW*, 797 S.W.2d at 611 (internal citations omitted). Thus, although courts ordinarily may not utilize extrinsic evidence in locating a piece of conveyed property where said evidence adds to or alters the property description set forth in the written agreement, when a party demonstrates mutual mistake through presentation of clear evidence that the written agreement erroneously describes the agreement intended by the parties, the parol evidence rule does not prohibit consideration of extrinsic evidence that adds to the written document's description. *See id.*; *In re Miller*, 286 B.R. at 340; *ABN*, 372 S.W.3d at 127.

### 2. Application

Here, the deeds of trust and the trustee's deed provide metes and bounds descriptions of the property and the street address of the tracts [Doc. 18-1 pp. 27–28; Doc.

8

18-2 p. 6]. Thus, the documents provide substantial evidence that "some particular tract was intended" and set forth a description by which a surveyor could locate the property. *Dobson*, 45 Tenn. at 619. Parol evidence may generally be used in this case, therefore, in order to locate the property conveyed. *Id.* Although, as noted by defendants, the derivation clause creates some uncertainty as to what exact portion of 351 Lyons Road the deeds meant to convey, this uncertainty does not arise until the parol evidence is examined, which is of no consequence. *Id.* The extrinsic evidence would also, however, add to or enlarge the description of that conveyed, in that the warranty deed includes Tract III, while the deeds of trust do not mention Tract III specifically. Consequently, without a showing of fraud or mutual mistake, the parol evidence rule would bar admission of this evidence. *ABN*, 372 S.W.3d at 127.

As addressed in detail below, however, the Court finds that plaintiff has demonstrated the existence of mutual mistake in this matter. Thus, the parol evidence rule does not prevent the Court from examining extrinsic evidence, such as the warranty deed, within the context of determining what the parties to the deeds of trust actually intended the documents to encompass, even if the external evidence adds to or alters the description found in the deeds of trust and the trustee's deed. *See GRW*, 797 S.W.2d at 611.

When the deeds of trust and the trustee's deed are viewed in combination with the warranty deed referenced in the derivation clause, it becomes clear that the deeds encompass the entire property, including Tract III and the correct metes and bounds description of Tract II. The address stated on the face of the deeds of trust encompasses

9

all three tracts, and the derivation clause confirms that the parties intended all of the property to be included. Thus, the Court finds that the deeds "designate the land intended to be conveyed with reasonable certainty." *ABN*, 372 S.W.3d at 128. The deeds of trust and the trustee's deed are valid, therefore, and do not fail for uncertainty. *Id.* at 127.

### B. Deed Reformation

Having found that the deeds of trust and the trustee's deed do not fail for uncertainty, the Court must now determine whether plaintiff is entitled to its sought relief—reformation of the deeds to reflect the parties' intended agreement.

#### 1. Law

Generally, courts aim to "give effect to the intention of the parties" at the time they entered into the agreement or transaction in question. *Ewing v. Smith*, No. 85-294-II, 1986 WL 2582, at *3 (Tenn. Ct. App. Feb. 26, 1986). When the parties have committed their agreement to writing, courts can typically ascertain their intent by examining the contract documents. *Id.*

Under Tennessee law, a court in equity may, however, "reform an instrument or deed when it fails to reflect the true intent of the parties." *Holiday Hosp. Franchising, Inc. v. States Res., Inc.*, 232 S.W.3d 41, 51 (Tenn. Ct. App. 2006). Thus, the basic purpose of reformation is to make the contract "conform to the real intention of the parties." *Lebo v. Green*, 426 S.W.2d 489, 494 (Tenn. 1968).

In order for a court to reform a deed, "[t]he error in the instrument must have occurred because of the mutual mistake of the parties or because of one party's mistake induced by the other party's fraud." *Holiday Hosp.*, 232 S.W.3d at 51. A mutual mistake is "a mistake common to all the parties to the written contract or the instrument or in other words it is a mistake of all the parties laboring under the same misconception." *Collier v. Walls*, 369 S.W.2d 747, 760 (Tenn. Ct. App. 1962); *see Town of McMinnville v. Rhea*, 316 S.W.2d 46, 50 (Tenn. Ct. App. 1985) ("A mistake may be defined to be an act which would not have been done, or an omission which would not have occurred, but from ignorance, forgetfulness, inadvertence, mental incompetence, surprise, misplaced confidence, or imposition, and it must be mutual or fraudulent." (internal citation omitted)); *see also Barker v. Harlan*, 71 Tenn. 505, 508 (1879) (stating that a mistake, in order to be the subject of correction, "must appear to have been a mutual mistake, not merely the oversight of one of the parties"). Mutual mistake includes, for instance, "[w]here land is sold and the deed conveys more or less than the contract called for." *Town of McMinnville*, 316 S.W.2d at 50 (internal citation omitted). Reformation requires clear and convincing evidence of the mutual mistake. *Sikora v. Vanderploeg*, 212 S.W.3d 277, 287 (Tenn. Ct. App. 2006).

A deed may not be reformed due to mutual mistake "if it affects intervening rights of third persons who actually and justifiably rely upon recorded instruments." *Minton v. Long*, 19 S.W.3d 231, 241 (Tenn. Ct. App. 1999); *see Johnson v. Johnson*, 67 Tenn. 261,

263 (1874) (reforming a deed where there were "no creditors nor purchasers for valuable consideration without notice in the case who are in a condition to interpose objection to the relief sought"). Furthermore, a deed may not be reformed if the mistake was due to the complainant's negligence or unilateral oversight. *Holiday Hosp.*, 232 S.W.3d at 51; *Loveday v. Cate*, 854 S.W.2d 877, 880 (Tenn. Ct. App. 1992). The complainant's own negligence only bars reformation in "extreme cases," however, where the negligence "amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." *Hunt v. Twisdale*, No. M2006–01870–COA–R3–CV, 2007 WL 2827051, at *7 (Tenn. Ct. App. Sept. 28, 2007) (internal citations omitted). "Mere inattention, as the word is used in common parlance, is not an absolute bar to reformation under Tennessee law." *Id.* This rationale stems from the reality that, "[o]ften times, a party could have avoided the mistake by exercising reasonable care, and if mere negligence barred recovery, the availability of relief for mutual mistake would be severely circumscribed." *Id.*

### 2. Application

Here, as reflected in their response to plaintiff's motion for summary judgment [Doc. 23] and their cross motion for summary judgment [Doc. 24], the Birchfields concede that they, as parties to the deeds of trust, intended the transactions to incorporate all three tracts of land and that the deeds of trust inadvertently did not include Tract III [*See* Doc. 23 p. 1 (stating that the Birchfields "do not disagree with the facts set forth in the plaintiff's motion" and simply providing additional facts with regard to the deeds of trust's erroneous

description of Tract II); Doc. 24 p. 6 (asserting that the exclusion of Tract III from the deeds of trust was a mistake)]. Thus, defendant ECU's argument that the parties' failure to include Tract III was not a mistake does not withstand scrutiny, in light of both contracting parties' contention to the contrary [Doc. 22 p. 10].

The Birchfields and ECU argue that the mistake was not mutual but was rather a unilateral mistake by plaintiff [*Id.*; Doc. 25 pp. 6–8]. Plaintiff's status as a bank does not change the fact that the evidence before the Court clearly demonstrates both parties' intent for the deeds of trust to encompass all of the land purchased by the Birchfields. Indeed, by the Birchfields' own admission, "A simple comparison of the description of the deed of trust with description in the deed would have revealed several discrepancies. The most obvious is that the deed has three tracts while the deed of trust has two tracts" [Doc. 25 p. 7]. Although the Birchfields contend that they, as laypersons, "would not have the expertise to check the documents to see if [the deed of trust] was correctly prepared," a generally accepted principle of contracts is that "[o]ne who signs a contract is presumed to know its contents." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) (internal citation omitted). Thus, although the Birchfields are not assumed to know the legal intricacies of the deeds of trust, as signatories to the agreement, the Court presumes their basic familiarity with the documents. Consequently, the "obvious" inadequacies of the deeds of trust—including the documents' exclusion of Tract III, which the parties mutually

intended to be covered by the deeds—was the Birchfields' mistake as well as plaintiff's mistake.[5]

Furthermore, with regard to plaintiff's arguable negligence, the Court finds that plaintiff's conduct more closely resembles "mere inattention" than an "extreme case" of failure to accord with reasonable standards of fair dealing. *Hunt*, 2007 WL 2827051, at *7. Its negligence does not, therefore, bar reformation of the deed in this case. *Id.*

Having found that the deeds of trust and the trustee's deed did not include the entire property purchased by the Birchfields, as intended by the parties, the Court must now determine whether defendant ECU's judgment liens represent intervening rights that preclude reformation of the deeds. Although a deed may not be reformed due to mutual mistake "if it affects intervening rights of third persons who actually and justifiably rely upon recorded instruments," *Minton*, 19 S.W.3d at 241, ECU possesses judgment liens on

---

[5] The Birchfields argue that the current case is similar to *Barker v. Harlan*, 71 Tenn. 505 (1879), in that it involves a unilateral mistake committed by plaintiff, rather than a mutual mistake. In *Barker*, however, one party unintentionally excluded a debt, which the other party did not know existed. *Id.* at 506. The mistaken party then unilaterally corrected the deed, after the unknowing party had signed the agreement. *Id.* at 506–07. The court found that the deed could not be changed after the contract was executed without the consent of both of the parties. *Id.* at 508. It further noted that if it was understood and agreed between the parties that the excluded debt was meant to be included but was omitted by mistake, "then the correction could be made, for in that case the mistake would have been the mistake of all parties." *Id.* at 506. In such a scenario, reformation of the deed would be proper in that it would "make the deed conform to the previous agreement and understanding of all the parties." *Id.*

The Court finds that the matter at hand more closely resembles the alternative scenario addressed by the court in *Barker*. The Birchfields admit that they intended the deeds of trust to include Tract III and that this portion of the property was negligently omitted. Thus, the mistake in this case is mutual, and reformation is required in order to make the deeds conform to the intent of the contracting parties.

all of the Birchfields' property, rather than standing as a bona fide purchaser. While purchasers and mortgagees have an affirmative duty to conduct title searches, judgment lienholders merely file their liens in the appropriate register's office. *See Holiday Hosp.*, 232 S.W.3d at 54. Thus, as a judgment lien creditor, ECU did not "act to its prejudice in reliance on [the deeds of trust or trustee's deed]." *Id.* Consequently, "because a judgment lien creditor has no duty to inspect title records and advances nothing in reliance on record notice," the Court finds that ECU's rights do not preclude the relief sought by plaintiff.[6] *Id.* at 53.

In sum, this Court finds the current matter similar to *Town of McMinnville*, 316 S.W.2d 46, in that the evidence before the Court establishes that the deeds of trust and trustee's deed failed to include all of the land plaintiff's predecessor in interest and the Birchfields agreed for the deeds to encompass. *See id.* at 49–50 (stating that "the deed executed by the defendants to the complainants did not include all of the property which was intended by the defendants to be sold, and intended by the complainants to be bought"). Thus, as in *McMinnville*, the Court finds that it would be inequitable to permit defendant

---

[6] The Birchfields and ECU compare ECU's intervening rights to those addressed in *In re Hunt*, 18 B.R. 504 (Bankr. E.D. Tenn. 1982) [Doc. 22 pp. 11–12]. The bankruptcy court in *In re Hunt* considered the intervening rights of a trustee to whom the debtor executed a deed of trust in order to secure a note payable to the bank. *Id.* at 505. Thus, the trustee in that scenario relied upon the deed to his detriment, which precluded reformation of the instrument. *Id.* at 506. Here, in contrast, ECU holds judgment liens against all of the Birchfields' property. Thus, the Court finds this case factually differentiable from *In re Hunt*, in that ECU did not rely upon the inaccurate deeds to its detriment. Indeed, ECU has presented the Court with no evidence that it actually relied upon the faulty documents.

15

ECU to retain first position priority lien over Tract III, when said tract was not included in the deeds of trust by mutual mistake. *Id.* at 52.

Having found that the trustee's deed stands as a valid security interest and does not fail for uncertainty, and that a mutual mistake occurred in the omission of Tract III from the deeds of trust and the trustee's deed, the Court will grant plaintiff its sought relief in the form of recession of the foreclosure sale and reformation of the erroneous deeds of trust and trustee's deed. Consequently, because there exists no genuine issue of material fact and plaintiff is entitled to judgment as a matter of law, the Court will grant plaintiff's motion for summary judgment and will deny defendants' cross motions.[7]

## IV. Conclusion

Accordingly, for the reasons stated herein, plaintiff's motion for summary judgment [Doc. 17] will be **GRANTED**, and defendants' cross motions for summary judgment [Docs. 20, 24] will be **DENIED**.

The Court shall further **ORDER** the following:

1. The Sullivan County, Tennessee records shall be **REFORMED** to reflect that the trustee's deed, recorded in book 3071, page 2379 in the Register's

---

[7] Because the Court finds that the description contained in the deeds of trust is legally sufficient, and it will order the deeds of trust and trustee's deed to be reformed based on mutual mistake, the Court need not consider whether imposition of an equitable lien would be appropriate in this case. *See In re Jones*, Nos. 11–10158, 13–1007, 2013 WL 5347452, at *7 (Bankr. E.D. Tenn. Sept. 23, 2013) ("[B]ecause the property description in [the] deed of trust was legally sufficient to convey the security interest in the condominium, it is unnecessary to address whether an equitable lien in the property would have arisen in favor of the bank had the property description been inadequate."); *In re Thomas Homes, LLC*, Nos. 09–32553, 10–3129, 2012 WL 122539, at *6–7 (Bankr. E.D. Tenn. Jan. 17, 2012) (imposing an equitable lien where reformation was unavailable because the error was not a mutual mistake committed by the parties).

16

Office is void, and the March 8, 2013, foreclosure sale shall be **RESCINDED**.

2. The Court will **DECLARE** that the Birchfields are the record owners of the property, subject to the first deed of trust and all inferior security interests of record.

3. The Court will further **DECLARE** that the first deed of trust, recorded in book 2467C, page 333 in the Register's Office, and the second deed of trust, recorded in book 2467C, page 352 in the Register's Office, shall be **REFORMED** by deleting the particular descriptions of the property set forth therein and by replacing the descriptions with the correct legal description of the entire property, as set forth in the warranty deed.[8]

4. Finally, the Court will **DECLARE** that the first deed of trust is a valid, enforceable, first priority security interest against the entire property, as

---

[8] Although addressed by none of the parties, the Court notes that the language in the warranty deed description of Tract III differs slightly from the description of Tract III set forth in plaintiff's complaint [*Compare* Doc. 18-1 p. 5, *with* Doc. 1-1 p. 14]. The final two lines of the metes and bounds description in the warranty deed states: "extending to the county road, a distance of 100 feet to an iron pin corner to Willard Lyon's north property line fence; thence for 143.45 feet to the point of beginning, containing 0.38 acres, more or less" [Doc. 18-1 p. 5]. Plaintiff's description, however, states: "extending to the county road, a distance of 100 feet to an iron pin corner to Willard Lyon's north property line fence; thence N. 86 deg. 30' W. with Lyons north property line fence for 143.45 feet to the point of beginning, containing 0.38 acres, more or less" [Doc. 1-1 p. 14].

Because plaintiff repeatedly states in its pleadings before the Court that the warranty deed contains "the complete and correct metes and bounds description" [Doc. 17 p. 2], the Court will include the description set forth in the warranty deed in its accompanying Order. Furthermore, because the descriptions are largely identical and both describe the tract as being 0.38 acres, the Court finds that plaintiff intended to describe the same piece of property.

described in the warranty deed, and all inferior security interests shall be reinstated of record in their respective lien positions as they held prior to the foreclosure sale.

The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.